_____
Honorable Gary Spraker
United States Bankruptcy Judge

Entered on Docket
February 20, 2024

_____

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

| In re: | Case No.: 23-11500-gs |
|---|---|
| PACIFIC PANORAMA, LLC, | Chapter 11 |
| Debtor(s). | Hearing Date<br>DATE: November 13, 2023<br>TIME: 9:30 a.m. |

**MEMORANDUM DECISION ON REQUEST FOR IN REM RELIEF**

On October 19, 2023, the court heard several matters arising in debtor Pacific Panorama, LLC's (Debtor) bankruptcy, including confirmation of Pacific Panorama's subchapter V plan (ECF No. 59) and the United States Trustee's (UST) motion to dismiss (ECF No. 43). Party-in-interest Kwala, LLC objected to confirmation of the proposed plan. Shortly before the hearing Kwala also filed a sur-reply that requested "*in rem* relief." ECF No. 118. At the hearing, Debtor's counsel advised the court that it did not oppose the UST's motion to dismiss and would not pursue confirmation of its plan. ECF No. 133 at 4. Kwala opposed dismissal of the bankruptcy unless the court granted its request for *in rem* relief on a retroactive basis so it could proceed with its foreclosure of Debtor's real property. *Id.* at 4-5. The court continued the hearing to provide the parties the opportunity to address Kwala's request for *in rem* relief. *See* ECF No. 130. On November 13, 2023, the court held the hearing on continued matters including dismissal and Kwala's request for *in rem* relief. At the conclusion of the hearing, the court stated its inclination to grant Kwala the relief it requested on a prospective basis.

1

For the reasons stated on the record and in this decision, the court will: (1) grant the UST's motion to dismiss the instant bankruptcy; and (2) amend the court's prior order granting relief from stay to include *in rem* relief under § 362(d)(4). The court will deny Kwala's request that relief be effective *nunc pro tunc*, in accordance with its withdrawal of that request at the November 13, 2023 hearing.

## Background

The real property at issue is located at 17000 West Sunset Blvd, Pacific Palisades, CA 90272 (Property). It is divided into two parcels, commonly referred to in these proceedings as the North Land and South Land. Secured lender Kwala owns the North Land. Debtor owns the South Land. A residence, built over 70 years ago, straddles the two properties. The history of the Property frames the continuing disputes.

**A. Gregg Corlyn acquires both parcels of real property.**

On June 29, 2001, a corporate grant deed was recorded transferring the South Land to an entity known as Pacific Palisades, LLC, in connection with a sale conducted in the JR International Group bankruptcy case. Pacific Palisades' managing member, Shlomy Weingarten, was a principal of both JR and Pacific Palisades. That same day, Pacific Palisades recorded a grant deed transferring the South Land to Gregg Corlyn. Corlyn would become the managing member of the Debtor.

On August 1, 2001, Pacific Palisades recorded a grant deed transferring the North Land to Corlyn. Accordingly, as of August 1, 2001, Corlyn owned both parcels of real property on which the residence was situated.

**B. Debtor acquires the North Land.**

On September 16, 2003, Debtor was formed in Nevada. Three days later, on September 19, 2003, Corlyn transferred the North Land to Debtor by a recorded grant deed. As of September 19, 2003, Debtor owned the North Land and Corlyn owned the South Land.

//

### C. The deeds of trust against the South Land.

In April 2007, Corlyn borrowed $3.675 million in his individual capacity from American Home Mortgage Acceptance, Inc. (AHMA), giving AHMA a first deed of trust on the South Land. In November 2009, the first deed of trust was assigned to Wells Fargo Bank, National Association as Trustee for the Certificateholders of Structured Asset Mortgage Investments II Inc. Trust 2007-AR4, Mortgage Pass-Through Certificates, Series 2007-AR-4 (Wells Fargo).

Also in April 2007, Corlyn borrowed $1 million from Countrywide Home Loans, Inc. (Countrywide), secured by a second deed of trust on the South Land. In December 2012, the second deed of trust was assigned to Amalgamated Bank.

### D. Debtor acquires the South Land and files its first bankruptcy.

On October 10, 2008, Corlyn transferred the South Land to Debtor by quit claim deed, though the deed was not recorded until January 27, 2010.

Corlyn defaulted on his loans secured by the South Land and on January 29, 2010, Debtor filed its first chapter 11 bankruptcy case in Nevada. Case No. 10-11464-MKN. Kwala contends that Debtor filed its first bankruptcy to prevent a pending foreclosure by Corlyn's secured creditors against the South Land. On September 20, 2011, the bankruptcy court granted Wells Fargo relief from the automatic stay under §§ 362(d)(1) and (d)(2), for lack of equity in the South Land and no reasonable prospect of reorganization. As of the date of the motion, Debtor had failed to file a chapter 11 plan or monthly operating reports and had no postpetition income. ECF No. 51 at 146.

In March 2012, the UST moved to dismiss Debtor's case based on the dearth of filings by Debtor and its apparent abandonment of the case. The court granted the motion and dismissed the case on April 19, 2012.

//

### E. Kwala purchases the North Land and Corlyn litigates the loans against the South Land.

In 2014, Kwala purchased the North Land from Debtor. As of 2014, Kwala owned the North Land while Debtor owned the South Land, which remained encumbered by the two deeds of trust securing Corlyn's loans.

On October 17, 2014, Corlyn commenced litigation in California against Wells Fargo and its servicer. That litigation expanded to include a number of additional litigants and spawned cross complaints, including one filed by Kwala. The California litigation remained pending as of the filing of Kwala's original motion for relief from stay. ECF No. 51 at 187-254.

### F. The joint venture.

In May 2021, Debtor entered into a joint venture called VCM Panorama. Debtor ostensibly transferred 50% of the South Land into the joint venture. The joint venture agreement was signed by Shlomy Weingarten as manager of the Debtor, Tom Vukota as president and CEO of VCM Global Asset Management (VCM Global), and Bruce Dalen, who was named in the joint venture agreement as an arbitrator in the event of any deadlocked disputes between Debtor and VCM Global. VCM Global loaned $300,000.00 to Debtor and committed to lend up to $4 million to be used to settle the liens on the South Land.[1] ECF No. 51 at 259. Under the section of the joint venture agreement entitled "Obligations of the Parties," paragraph 6(b) provided that Debtor "is and will continue to negotiate with Wells Fargo and Amalgamated Bank and their respective services/representatives including putting the property into chapter 11 bankruptcy…." *Id*. Notwithstanding its contribution to the joint venture, Debtor continued to hold title to the South Land, though fifty percent of the ownership was purportedly held in trust for the benefit of VCM Global.

---

[1] The Joint Venture Agreement confusingly stated that VCM Global will "invest up to $4,600,000.00 (four million dollars) to this Project to be used for the settlement of the debt and liens on the Property." ECF 51 at 259. Debtor and VCM Global later entered into a Restated Joint Venture Agreement, dated September 23, 2021 (Restated JVA) that appears to have clarified its commitment of funds to settle the liens on the South Land to be $4.6 million. *Id.* at 7.

On May 17, 2021, Mr. Weingarten, as manager of Debtor, executed a Short Form Deed of Trust (Third Deed of Trust) to encumber the Property and secure repayment of the $300,000 loan from VCM Global, which was recorded on May 27, 2021.

### G. Debtor's second bankruptcy.

The following month, on June 28, 2021, Debtor filed its second chapter 11 bankruptcy case, this time in the United States Bankruptcy Court for the Central District of California. Case No. 21-15239-WB.

On September 8, 2021, the UST moved to dismiss the case for bad faith. The UST argued that bad faith was evidenced by the filing of the case on the eve of a foreclosure sale scheduled by Amalgamated, and Debtor having only one asset and no income. Shortly after the UST filed its motion to dismiss Amalgamated filed its motion for relief from the automatic stay.

On November 4, 2021, the Hon. Julia Brand read into the record her oral rulings on the UST's motion to dismiss and on Amalgamated's motion for relief from the automatic stay filed in Debtor's second bankruptcy case. ECF 51 at 265. In granting Amalgamated relief under § 362(d)(1), Judge Brand concluded Debtor's case was filed in bad faith:

> It's essentially a single-asset real estate case which involves while not a two-party dispute, it's a dispute between the Debtor and the lenders. And it's a dispute that should be resolved in the state court litigation that's been going on for a long time.
>
> There's no business to reorganize. The amount of the debt, the unsecured debt is small compared to the total debt, and the vast majority of that is owed to one law firm for a claim that is 16 years old. And the Trustee looked at it. You know, that claim may or may not be barred by the statute of limitations.
>
> And, essentially, there's no prospect of reorganization here. So I find that the case was filed to just delay the secured creditor from enforcing its rights.

ECF No. 51 at 274. Judge Brand also granted the UST's motion to dismiss, with a 180-day bar to refiling, for the same reasons, adding:

> Any income that was generated with respect to the property was diverted to the principal without any explanation as to why that money was not provided to the company.
>
> The company has no income, and the explanations offered by Mr. Weingarten contradict -- he has provided many contradictory statements. First he says that he

> moved on to the property to care for it and take, you know, take care of it and develop it. That was in 2013, and that was his passion, yet the property is in the same state it was – has been in for many years.
>
> And he further stated that the house is not livable. It was, you know, constructed of poor materials and poorly constructed. It's basically, you know, not inhabitable. But he's there and he's renting it out – or has rented it out as an Airbnb, and he claims that he kept, you know, whatever money was collected based on repairs that he did, but there's statement about what those repairs were to this barely inhabitable house. It doesn't make sense what he says.

*Id.* at 275-76.

Judge Brand did, however, deny Amalgamated's request for *in rem* relief under § 362(d)(4), concluding that Debtor's 2010 bankruptcy and the multiple transfers of the Property were too remote to form part of a scheme involving Debtor's 2021 bankruptcy case.

Shortly after Judge Brand dismissed the second bankruptcy, on November 23, 2021, Pacific Panorama executed another Short Form Deed of Trust and Assignment of Rents (Fourth Deed of Trust), again acting through Mr. Weingarten, in favor of VCM Global. The Fourth Deed of Trust secured a stated debt owed to VCM Global under a promissory note in the amount of $5,100,000. VCM Global recorded the Fourth Deed of Trust on December 1, 2021. The record before the court does not include the referenced promissory note. Nor does it establish that Pacific Panorama ever received $5,100,000, or what happened to such funds if it did.

**H. Kwala acquires the deeds of trust encumbering South Land.**

On April 4, 2022, Kwala acquired both the first and second deeds of trust secured by the South Land.

On October 3, 2022, Kwala recorded its notice of default under the first deed of trust. In response, on December 2, 2022, Debtor filed a complaint against Kwala in Los Angeles Superior Court, seeking a temporary restraining order to halt Kwala's foreclosure (Superior Court Litigation). A temporary restraining order was issued, but after months of litigation, the Superior Court denied Pacific's request for a preliminary injunction, and the temporary restraining order was dissolved on April 17, 2023.

//

### I. Debtor's third bankruptcy.

On April 18, 2023, the day after dissolution of the temporary restraining order in the Superior Court Litigation, Debtor filed this bankruptcy case, its third. Its schedules and statements revealed that it held just over $2,000 in cash. Its only other asset was South Land, which it valued at just over $20 million in its Schedule A/B.

In its Schedule D, Debtor revealed that in addition to Kwala's first and second position deeds of trust, VCM Global held a third position lien securing a $300,000.00 debt, and a fourth position lien securing a $5.1 million debt. The only other creditors listed were the Los Angeles County Treasurer for unpaid property taxes; Dalen with an unsecured loan of $50,000.00; and unpaid legal fees of $40,000.00 owed to Mark Shafron. In response to item number 28 in its Statement of Financial Affairs, Debtor listed Shlomy Weingarten as a managing member holding ninety percent of the interest in Debtor, with managing members Tom Vukota and Revital Weingarten holding five percent each.

One week after Debtor's third bankruptcy case was filed, the Los Angeles Superior Court held a hearing on Kwala's motion for judgment on the pleadings in the state court case. The Los Angeles Superior Court agreed with Kwala that Debtor lacked standing to assert the causes of action brought in the first amended complaint, because Corlyn, not Debtor, was the borrower under both of Kwala's security interests. Debtor was given leave to amend, and filed its second amended complaint on May 12, 2023, asserting breach of contract and seeking injunctive relief, among other things. In response, Kwala filed a demurrer and a motion to strike, which were set for hearing on June 20, 2023. On June 7, 2023, Debtor filed a request to dismiss the Superior Court Litigation; per the form request, the case was dismissed the following day, on June 8, 2023. Nevertheless, on June 9, 2023, Debtor caused the Superior Court Litigation to be removed to this court, commencing Adversary Proceeding No. 23-01102.

On June 29, 2023, the UST filed its motion to dismiss Debtor's third bankruptcy case for failure to maintain adequate insurance on the Property. Approximately one week later, Kwala

7

filed its motion for relief from the automatic stay, including a request for *in rem* relief under § 362(d)(4).

Debtor filed its subchapter V plan of reorganization on July 17, 2023 (Plan). Debtor proposed to obtain $6 million in a capital contribution from VCM Global, of which approximately $5.5 million was to be paid to Kwala to extinguish its liens on the South Land. Under the Plan, VCM Global would receive no payments through the Plan, but would retain its membership interest in Debtor. The Plan further proposed that after confirmation the reorganized entity would be owned by a newly created subsidiary of VCM Global, in which Mr. Weingarten would be given an interest "in accordance with the terms of a joint venture agreement." ECF No. 59 at 7.

### J. The relief from stay and motion to stay hearings in Debtor's bankruptcy case.

The court heard both the motion for relief from stay and the motion dismiss on September 7, 2023, together with Kwala's motion to remand the removed Superior Court Litigation. At the hearing, the court gave its oral ruling granting the motion to remand the Superior Court Litigation, concluding that Debtor's removal of the Superior Court Litigation constituted forum shopping. The court entered its order remanding the litigation on September 29, 2023. *See* Adversary Proceeding No. 23-01102, Adv. ECF No. 7.

The court also granted Kwala's motion for relief from the automatic stay for cause under § 362(d)(1). The court expressed its concern that Kwala continued to be stayed from foreclosure when Debtor was not the borrower on the underlying obligations secured by Kwala's deeds of trust. Still, the court denied Kwala's request for *in rem* relief under § 362(d)(4). Based on the record before it, the court ruled that Debtor's third bankruptcy case was an aggressive use of bankruptcy, but not evidence of a scheme to hinder, delay and defraud Debtor's creditors. In discussion after its ruling, however, the court warned that "three bankruptcies in a short term would appear, especially after another adverse ruling, would seem to be much different to me than two bankruptcies, however situated, unless the debtor-creditor relationship can be changed." ECF No. 95, Transcript at 69:1-5. The UST's motion to dismiss the case was continued to

October 19, 2023. The court entered its order granting Kwala's motion for relief from the automatic stay on September 21, 2023.

### K. 17K West Sunset's bankruptcy filing, and Kwala's renewed request for *in rem* relief.

The initial hearing on confirmation of the Plan was scheduled for October 19, 2023, to be heard with the continued hearing on the UST's motion to dismiss. Two days prior to the confirmation hearing, on the day of its scheduled foreclosure sale, Kwala filed a sur-objection to confirmation, alerting the court to a new chapter 11 bankruptcy case filed by 17K West Sunset, LLC.

VCM Global had assigned its Third and Fourth Deeds of Trust to 17K West Sunset on September 29, 2023, and October 2, 2023, respectively. On October 6, 2023, Mr. Vukota signed 17K West Sunset's bankruptcy petition as its managing member, and the chapter 11 petition was filed on October 10, 2023, in the United States Bankruptcy Court for the Central District of California. Several days later, on October 16, 2023, counsel for 17K West Sunset served Kwala with a notice of the automatic stay advising Kwala that its scheduled foreclosure sale violated the stay. Counsel further advised that 17K West Sunset sought to exercise its newly acquired right of redemption as a junior lienholder. 17K West Sunset's later filed schedules reflect that it has no liquid assets and no income.

Based on 17K West Sunset's bankruptcy filing Kwala requested the court grant it *in rem* relief from the automatic stay *nunc pro tunc* under the court's inherent powers under § 105(a) to amend its prior order granting relief from the automatic stay to include *in rem* relief based the bad faith filings. ECF No. 118 at 6.

At the Plan confirmation hearing on October 19, 2023, counsel for Debtor informed the court that Debtor and the UST had stipulated to dismiss the bankruptcy case.

The court construed Kwala's request for *in rem* relief in its sur-objection as a motion seeking conditional dismissal of the case, with dismissal to include relief from the automatic stay

9

with an *in rem* bar. Unwilling to act *sua sponte,* the court set deadlines for additional briefing by the parties to address Kwala's request for *in rem* relief and continued the confirmation hearing.

At the continued hearing on November 13, 2023, the court heard argument from counsel for Kwala, Debtor, and 17K West Sunset. Counsel for 17K West Sunset stated on the record that, as in Debtor's bankruptcy, funding for 17K West Sunset would be provided by VCM Global. Moreover, counsel revealed that although VCM Global held sufficient funds to redeem or reinstate Kwala's liens, it sought to raise financing to pay the senior secured debt rather than "empty its coffers." ECF No. 156, Transcript at 16:2-14. For its part, Kwala withdrew its request that *in rem* relief to be made effective *nunc pro tunc*.

After argument concluded, the court gave its tentative ruling on the record. For the reasons stated below, the court will adopt that ruling and grants Kwala's request for prospective *in rem* relief from the automatic stay, under § 362(d)(4).

## Argument

Kwala has advanced two means by which it contends the court may grant its request for *in rem* relief from the automatic stay: the court's inherent powers created by § 105(a), or by amending the court's September 21, 2023 order granting relief from the automatic stay. The court will address each argument in turn.

### A. Inherent Powers Under § 105(a)

Having previously declined to grant Kwala relief under § 362(d)(4), Kwala urges the court to grant *in rem* relief using its equitable powers under § 105(a). Section 105(a) provides that a bankruptcy court "may issue any order ... that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a). But § 105(a) also expressly states "No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

In making its argument, Kwala relies most heavily on the United States Bankruptcy Court for the Central District of California's decision in *In re 4th Street East Investors, Inc.*, 474 B.R.

10

709, (Bankr. C.D. Cal. 2012). In that case, the court concluded that *in rem* relief from the automatic stay was appropriate under § 362(d)(4). Alternatively, the *4th Street* court concluded that *in rem* relief could also be granted under the "plain meaning of § 105(a)." *Id.* at 712. The court concluded that § 105(a) authorized bankruptcy courts "'to take appropriate action in order to prevent abuse of the bankruptcy process.'" *Id.* (quoting *In re Fernandez*, 212 B.R. 361, 372 (Bankr. C.D. Cal. 1997), *aff'd on other grounds*, 227 B.R. 174 (B.A.P. 9th Cir. 1998)).

The *4th Street* case was decided prior to the United States Supreme Court's decision in *Law v. Siegel,* 571 U.S. 415 (2014). In *Siegel*, the Supreme Court held that a bankruptcy court cannot not use § 105(a) to contravene express provisions of the Bankruptcy Code. *Id.* at 426. In other words, where the Bankruptcy Code provides a remedy, the court may not fashion an alternative remedy utilizing the equitable powers conveyed by § 105(a) to bypass the requirements of the statutory remedy provided. Here, § 362(d)(4) expressly provides for the *in rem* relief that Kwala seeks. Under *Siegel,* the court may not rely upon § 105(a) for relief available under § 362(d)(4). Kwala has cited no post-*Siegel* authority to the contrary, and the court perceives no basis for deviation from the binding precedent established by the Supreme Court.

### B. *In Rem* Relief Under § 362(d)(4)

Kwala also requested that the court "amend the order granting relief from stay (Doc. 100) to include in rem relief nunc pro tunc, and waive the 14 day stay under FRBP 4001(a)(3)." ECF No. 118 at 6. Kwala's renewed request for *in rem* relief sought to amend the court's prior order granting it relief from the automatic stay to now include relief provided for under § 362(d)(4). The court further clarified that relief was being sought under § 362(d)(4) in its Scheduling Order. ECF No. 130. Section 362(d)(4) provides in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay… with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—

11

> (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
>
> (B) multiple bankruptcy filings affecting such real property.
>
> If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court….

11 U.S.C. § 362(d)(4). "By seeking relief under § 362(d)(4), the creditor requests specific prospective protection against not only the debtor, but also every non-debtor, co-owner, and subsequent owner of the property." *Alakozai v. Citizens Equity First Credit Union (In re Alakozai)*, 499 B.R. 698, 703 (B.A.P. 9th Cir. 2013). Congress stated that the purpose of enacting § 362(d)(4) was to "reduce abusive filings." *In re Tejal Investment, LLC*, 2012 WL 6186159, at *4 (Bankr. D. Utah Dec. 12, 2012) (quoting H.R.Rep. No. 109–31(I), at 70 (2005)).

At the September 7, 2023 hearing on Kwala's motion for relief from the automatic stay, the court noted that whether to grant *in rem* relief under § 362(d)(4) was "somewhat of a close question." ECF No. 95, Transcript at 63:22. The court referenced Judge Brand's decision in Debtor's second bankruptcy case, agreeing that Debtor's first bankruptcy case was too remote in time to be part of a scheme to hinder, delay or defraud Debtor's creditors. As to Debtor's immediate bankruptcy case, at the stay relief hearing the court was willing to "accept what the [D]ebtor says it can and proposes to do," finding that Debtor's third bankruptcy case "shades to an aggressive use of the Court system, including bankruptcy." *Id.*, Transcript at 65:6-9. The court expressly left the question of bad faith undecided. *Id.*, Transcript at 67:17-19.

Also at the September 7, 2023 hearing, the court referenced its prior decision in *In re Hymes*, 2013 WL 653060 (Bankr. D. Alaska Feb. 20, 2013), cited by Kwala in its briefing. In the *Hymes* case, the debtors had spent over twenty years attempting to avoid federal tax debt they owed to the United States. After the United States finally obtained an order of foreclosure on its tax liens from the United States District Court for the District of Alaska (which the debtors twice asked that court to reconsider, and then appealed to the Ninth Circuit Court of Appeals, which affirmed), it evicted the debtors and scheduled a foreclosure sale. 2013 WL 653060, at *2.

Thereafter, the debtors, among other things: filed a bogus *lis pendens* in violation of the District Court foreclosure order; filed a chapter 7 bankruptcy the day before the scheduled foreclosure sale, which was converted to chapter 13 and then dismissed approximately six months after filing; sought reconsideration of the dismissal of their bankruptcy case, and then appealed the denial of reconsideration to District Court, which affirmed; moved back in to the property, forcing the United States to evict them again; again filed a bogus *lis pendens* in violation of the District Court foreclosure order; filed another bankruptcy case, just six days before the foreclosure sale; and erroneously represented in their schedules that the litigation with the United States remained pending. *Id.* at **2-3. The United States filed a motion for relief from the automatic stay in the debtors' latter bankruptcy case, seeking *in rem* relief under § 362(d)(4). *Id.* at *3.

The court found that the United States easily met the requirement of proving multiple bankruptcy filings affecting the subject property, the debtors having filed two bankruptcy cases just four years apart, both on or near the eve of foreclosure. *Id.* at *4. It conducted a more in-depth analysis in concluding whether the multiple filings were part of a scheme to hinder, delay and defraud creditors. The court identified and examined four factors "as probative of a scheme to hinder, delay or defraud creditors: (1) the strategic filing of a bankruptcy petition to prevent collection, (2) multiple petitions by multiple parties to protect common property, (3) lack of evidence of changed circumstances between bankruptcy filings, and (4) inability to fund a plan." *Id.* *5 (citing cases).

On the record at the September 7, 2023 hearing the court distinguished the *Hymes* case from this one, concluding that the circumstances presently before it did not rise to the level of a scheme to hinder, delay or defraud creditors as the debtors' actions did in *Hymes*. To put it bluntly: that was then, and this is now. Subsequent to the court's decision and the order granting Kwala's stay relief motion, three significant things have occurred: (1) Debtor effectively abandoned its pursuit of its third bankruptcy case, agreeing to dismiss pursuant to the UST's motion to dismiss; (2) VCM Global transferred its deeds of trust to the newly-created 17K West

Sunset entity; and (3) shortly after receiving the deeds of trust, 17K West Sunset filed its own bankruptcy case asserting that Kwala's scheduled foreclosure was stayed. What remains unchanged, however, is that neither Debtor nor 17K West Sunset has any income. Instead, they seek to finance a right of redemption (or reinstatement) without any present ability to do so. In light of the changed circumstances and for the reasons stated below, the court is persuaded that relief under § 362(d)(4) is now appropriate and necessary.

First, Kwala has proven that it is a creditor whose claim is secured by an interest in the subject real property. It holds the first and second deeds of trust on the South Land. Second, the court concludes that the three bankruptcy cases filed between 2021 and 2023 by Debtor and 17K West Sunset affect the South Land and easily satisfy the requirement for multiple bankruptcy filings under § 362(d)(4). Debtor holds title to the South Land. 17K West Sunset is the holder of the Third and Fourth Deeds of Trust on the South Land, and has asserted that Kwala's foreclosure sale on the South Land is automatically stayed by its bankruptcy case.

The remaining inquiry under § 362(d)(4) is whether the multiple bankruptcy filings affecting the South Land are part of a scheme to hinder, delay and defraud the debtors' creditors. Although reticent to find that such a scheme existed when first presented with Kwala's motion for relief from stay, the subsequent actions of Debtor and 17K West Sunset have convinced this court that a scheme does indeed exist. First, contemporaneous with this decision the court is dismissing the 17K West Sunset bankruptcy for bad faith. As such, the Property has been involved in multiple bad faith bankruptcy filings directed at preventing Kwala's foreclosure. Though the court did not make a finding of bad faith in this bankruptcy, it noted the question was close and denied relief under § 362(d)(4) with the intention and understanding that Kwala's foreclosure would proceed based upon the relief from stay the court granted. The subsequent actions on the heels of that relief from stay convincingly demonstrate that what the court charitably construed as the aggressive use of bankruptcy is now revealed to be a scheme to delay, hinder, or defraud Kwala.

The difference between a valid bankruptcy and bad faith rests in whether the debtor is seriously attempting to reorganize on a feasible basis. *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994). Pacific Panorama and 17K West Sunset are controlled by the same group of people. They are not seriously attempting to reorganize. Their bankruptcy cases have served to protect the South Land from foreclosure. When Pacific Panorama's efforts failed after two successive bankruptcy filings, 17K West Sunset was created to continue the effort.

The multiple bankruptcy filings were also strategically timed: Debtor filed its 2021 bankruptcy case on the eve of Amalgamated's foreclosure sale; Debtor filed this bankruptcy case the day after its temporary restraining order against Kwala was dissolved in state court; and 17K West Sunset filed its bankruptcy case just one week prior to Kwala's scheduled foreclosure sale after this court granted relief from stay. The emerging pattern of alternating the bankruptcy filings in Nevada and California further evidence a wrongful intent in the form of forum shopping.

There is also no evidence of changed circumstances between any of the three bankruptcy cases. In Debtor's 2021 bankruptcy case, Judge Brand described Debtor's case as "essentially a single-asset real estate case" involving "the Debtor and the lenders," with "no business to reorganize," with low unsecured debt compared to the total debt, no income for the debtor, and "essentially, there's no prospect of reorganization here." Those conclusions remain true in both Debtor's case and the 17K West Sunset case. Debtor's case remains essentially a single-asset real estate case, with Debtor's secured debt of nearly $9.6 million swamping its unsecured debt of approximately $160,000.00 to its professionals and insiders. In its Statement of Financial Affairs, Debtor reported "unknown" income in the most recent two prior years, and was over $120,000.00 in the proverbial red in 2021. It also listed two foreclosure lawsuits with Kwala as its only legal actions in response to item seven of the Statement of Financial Affairs.

17K West Sunset's bankruptcy case fares no better. In its schedules, it lists its only property as the Third and Fourth Deeds of Trust on the South Land. The only creditor it lists with claims of any value is Kwala, which Kwala has persuasively refuted. In its Statement of

15

Financial Affairs, 17K West Sunset had nothing to disclose or report with the exception of noting that Mr. Vukota was the 100% owner of the company and that fees were somehow paid to its bankruptcy counsel despite having no income or cash.

Originally filed as a chapter 11 bankruptcy case, counsel for 17K West Sunset has moved to convert the case to chapter 7, faulting this court's delay in entering this decision as the cause for conversion. The court is not persuaded. Counsel admitted on the record on November 13, 2023 that VCM Global has sufficient funding to redeem or reinstate Kwala's liens, but prefers instead to obtain third party financing rather than empty VCM Global's "coffers." This statement, especially if true, strikes the court as further gamesmanship and evidence that nothing has changed since Debtor agreed to dismiss its own case, which was also to be funded by VCM Global, as was the purported joint venture before that.

This brings the court to the final factor in examining whether a scheme exists for purposes of § 362(d)(4): the inability to fund a plan. Neither Debtor nor 17K West Sunset have ever had their own income; both are entirely reliant on third-party funding. Both debtors have touted such funding as readily available. As to Debtor, its counsel stated on the record at the court's October 19, 2023 hearing that Debtor had approved financing from Legalist in the range of $6.5-$6.75 million.[2] Yet, it still chose to dismiss its case. According to 17K West Sunset's motion to convert, it too has obtained third-party funding, but cannot bring it to fruition because Debtor's case remains pending. All of this ultimately adds up to a scheme to hinder, delay or defraud Kwala and thwart its efforts to foreclose.

For these reasons, the court concludes that the elements for relief under § 362(d)(4) have been abundantly satisfied.

//

---

[2] It remains unclear to the court how an entity with no income could obtain financing to acquire a parcel of real property that is improved by a residence that extends to the adjoining property owned by Kwala.

### C. Procedural Issues

The court is cognizant of the unusual procedural posture of the relief requested by Kwala. Its original request for relief under § 362(d)(4) was denied. It did not bring a timely motion for reconsideration of that court order, nor did it file a motion to amend that order. Instead, in its sur-objection to Plan confirmation, Kwala requested that the court "issue, *sua sponte*, an amended order granting relief from stay with an *in rem* bar…." ECF No. 118 at 6:16-17. At the October 19, 2023 hearing, the court stated that it construed the sur-objection as "essentially [a] request for relief as to the terms of dismissal…seeking an *in rem* bar, at least stated under 105(a) by reference to 362(d)(4)." ECF No. 133, Transcript at 16:17-19. In its scheduling order following the hearing, the court stated that it "will treat the Sur-Objection as a motion to amend the Stay Relief Order or for other relief to condition the dismissal of the bankruptcy case." ECF No. 130 at 2. The court's order set deadlines for the parties to file supplemental briefs addressing the issues raised in the sur-objection; none of the three supplemental briefs filed addressed amendment of the court's order granting stay relief. Both Kwala and Debtor focused on whether *in rem* relief could be granted under § 105(a), although Kwala construes the requirements for such relief under § 105(a) to be identical to § 362(d)(4). ECF No. 140 at 19. 17K West Sunset argued against entry of an order granting relief under § 362(d)(4) but did not address the standards for amendment.

Mr. Vukota and 17K West Sunset substantively changed the fine line between aggressive use of bankruptcy and a scheme to delay, hinder, or defraud, when they sought to insert themselves into the foreclosure process by filing bankruptcy for a newly created entity with no meaningful assets or income. The clear purpose of that bankruptcy was to further frustrate Kwala's efforts to foreclose its deeds of trust, for which this court had just granted relief from stay. Whether the court re-examines its prior order for relief from stay or considers relief under § 362(d)(4) anew, the result is the same. Mr. Vukota is inextricably intertwined with Debtor, and 17K West Sunset is effectively an extension of Debtor's efforts to avoid foreclosure. The timing and circumstances establish its role in a singular scheme to forestall foreclosure.

17

Kwala cited to § 105(a) under its provision to act against abuse of the bankruptcy process. The court agrees that the actions of Debtor and 17K West Sunset constitute an abuse of process here. For the reasons explained above, however, it feels constrained to proceed under § 362(d)(4). Ostensibly, because the creation and bankruptcy filing of 17K West Sunset occurred after, and in response to, the court's relief from stay order, a separate, new motion for *in rem* relief is appropriate. Alternatively, Fed. R. Civ. P. 60(b), made applicable by Fed. R. Bankr. P. 9024, permits courts to grant relief from orders in certain instances delineated in six subsections. Rule 60(b)(6)[3] is a "catch all" provision that authorizes a court to grant relief from its order "for any reason that justifies relief." "Relief under Rule 60(b)(6) will not be granted unless the moving party is able to show both injury and circumstances beyond its control prevented timely action to protect its interest." *Gardner v. Martino*, 563 F.3d 981, 991 (9th Cir. 2009).

Whether the court construes Kwala's request in its sur-objection as a new motion for relief under § 362(d)(4), or as a motion to amend the stay relief order under Rule 60(b)(6), relief is appropriate to address the post-order conduct affecting the Property. Kwala has proven both injury – further delay of its foreclosure sale – as well as circumstances beyond its control – the creation of 17K West Sunset, the assignment of the Third and Fourth Deeds of Trust secured by the Property, and the subsequent bankruptcy filing. As the court stated in its oral tentative ruling, "creating a new entity that has no revenue stream, no assets apart from the interest in the deed of trust, and no ability apparent to reorganize as itself, seems to be just the epitome of the continuance of a scheme." ECF No. 156, Transcript at 40:5-8.

Kwala is clearly entitled to the relief it has requested on the record before the court. There are different paths to get there. The court concludes that amendment of its stay relief order

---

[3] Although Rule 60(b)(2) permits relief for "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)," such evidence must have been in existence at the time the order from which relief is sought was entered. *Erde v. Eisenberg (In re Erde)*, 2019 WL 6530054, at *3 (B.A.P. 9th Cir. Dec. 3, 2019) (citing *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990)). As noted, 17K West Sunset was not created until after the court entered its order granting Kwala's motion for relief from the automatic stay.

is appropriate under Rule 60(b)(6) to grant *in rem* relief to Kwala under § 362(d)(4) based on the facts and circumstances involving 17K West Sunset and the continued efforts to avoid foreclosure.

## Conclusion

For the reasons stated above, the court shall grant Kwala's request (ECF No. 118) to amend the court's order granting relief from the automatic stay (ECF No. 100) to include *in rem* relief under § 362(d)(4). The court will also grant the UST's motion to dismiss this case based on Debtor's consent to dismissal. The court shall enter separate orders consistent with this memorandum decision.

IT IS SO ORDERED.

\* \* \* \* \*

Copy sent to all parties and/or their counsel via CM/ECF Electronic Notice.

# # #